AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN KEMPER, ) | |
| ) | |
| Plaintiff, ) | No. 03 C 9392 |
| ) | |
| vs. ) | |
| ) | |
| COACHMAN RECREATIONAL ) | Judge Arlander Keys |
| VEHICLE CO., LLC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant Coachman Recreation Vehicle Co., LLC.'s ("Coachman") Motion for Summary Judgment. John Kemper brought suit again Coachman, alleging that Coachman sold him a defective motor home and failed to repair it properly. In its Motion, Coachman argues that Mr. Kemper's suit cannot survive summary judgment, because his case rests upon insufficient expert testimony. For the reasons set forth below, Defendant's Motion is Denied.

**BACKGROUND**

John Kemper made the now regrettable decision to purchase a Coachman Cross Country Motorhome (the "Motorhome") from Michiana RV, a subsidiary of Coachman, in June of 2003. Michiana presented the Motorhome as new, and sold it to Mr. Kemper for $111,995.00.

Mr. Kemper alleges that, shortly after purchasing the Motorhome, he became aware of its many defects, including a defective electrical system, awning door, exterior trim, interior

trim, rust, closet door, day/night shade, air horn, slide out, entry door and step, washer/dryer vent, stove vent, roof, wall paneling, air bags, entertainment system, battery compartment, battery, sewer hose, and dinette table. Plaintiff submitted the Motorcoach to Defendant for numerous, lengthy repair attempts, which allegedly failed to remedy the defects.

At his deposition, Plaintiff testified to the numerous defects, stating that "I have not been able to be nowhere [sic] without problems from the day I drove it on the street, the day I got in the driver's seat." Pl.'s Dep at 100. In addition, Plaintiff hired William[1] Anderson to appraise the Motorhome. In doing so, Mr. Anderson reviewed the Motorhome's repair history, interviewed Plaintiff, and inspected the Motorhome. Mr. Anderson testified that "I found with the vehicle, especially the defects which relate to safety of the occupants as well as the traveling public, i.e., the batteries not holding a charge, the air system not working correctly and suspending the vehicle per design. It's not good. . . . [I]f all the defects had been known at the time of purchase, this vehicle would have been worth only salvage or less than salvage." Anderson Dep at 43.

---

[1] Although Plaintiff's Statement of Fact identifies the expert as "William" Anderson, Mr. Anderson's declarations, and other references in the record, identify Mr. Anderson as "Dale" Anderson.

**DISCUSSION**

Defendant challenges Mr. Anderson's credentials and methodology under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and argues that, because Mr. Anderson's testimony is inadmissible, Plaintiff has not produced evidence of damages sufficient to survive summary judgment. Plaintiff counters that Defendant's view of *Daubert* is overly rigid, and that his evidence of damages is more than sufficient, even without Mr. Anderson's testimony. The Court agrees with Plaintiff and denies Defendant's Motion.

Rule 702 of the Federal Rules of Evidence provides that an expert witness may testify regarding technical, scientific, or other specialized knowledge, if: 1) the testimony is based upon sufficient facts or data; 2) the testimony is based upon reliable and verifiable principles and methods; and 3) the expert properly applied those principles and methods.

*Daubert* requires this Court to act as a gate keeper, and to admit only that expert testimony that satisfies the following two-step analysis. *Chapman v. Maytag Corp.*, 297 F.3d 682, 686 (7th Cir. 2002). The Court must first analyze whether the expert's reasoning is "scientifically valid." *Id.* at 687. Testimony based upon subjective belief and speculation is not permitted; "scientifically valid" testimony is that which has been subjected to the scientific method. *Id.* Next, the Court

must determine "whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993) ("scientific testimony must 'fit' the issue to which the expert is testifying.")

In assessing the reliability of the testimony under the first *Daubert* prong, courts look to the following factors: 1) "whether a theory or technique . . Can be (and has been) tested;" 2) "whether the theory or technique has been subjected to peer review and publication;" 3) "the known or potential rate of error;" 4) "the existence and maintenance of standards controlling the technique's operation;" and 5) whether the method has met with general acceptance. *Daubert*, 509 U.S at 593-94.

In the instant case, Defendant challenges the admissibility of Mr. Anderson's testimony on the grounds that the testimony does not satisfy these five *Daubert* factors. Defendant claims that Mr. Anderson's testimony is purely subjective, and fails to rely upon (unidentified) "accepted valuation or computation guides utilized in the motor vehicle industry." Def's Mot. At 5.

Plaintiff correctly notes that Mr. Anderson's testimony cannot be characterized as "scientific" expert testimony. While this does not alter the Court's gatekeeping role, the Court's analysis of non-scientific expert testimony is not tied to the traditional *Daubert* factors. *Kumho Tire Co., Ltd. v. Carmichael,*

4

526 U.S. 137, 147-48 (1999). When analyzing such testimony, the Court must "fashion an approach more precisely tailored to an evaluation of the particular evidentiary submission before it. . . . the measure of intellectual rigor will vary by field of expertise and the way of demonstrating expertise will also vary." *United States v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002). The Advisory Committee Notes to Rule 702 explain that, in certain fields, "experience is the predominant, if not the sole basis for a great deal of expert testimony." The Seventh Circuit has repeatedly stated that "genuine expertise may be based on experience or training." *Conn*, 297 F.3d at 556 (quoting *Tyus v. Urban Search Mgmt*, 102 F.3d 256, 263 (7th Cir. 1996)).

Plaintiff states that Mr. Anderson has substantial experience inspecting and appraising numerous vehicles, and twelve years of experience appraising, buying, and repairing commercial and recreational vehicles. While in charge of pre-trip inspections of motor homes for Don Ray Morgan Drive-A-Way, Mr. Anderson inspected over 100 motorhomes, and has served as an expert witness in two warranty cases. Plaintiff argues that Mr. Anderson's experience more than qualifies him to testify with regard to the diminished value of the Motorhome, and generally explain the repairs performed and defects observed.

Defendant counters that the only experience Mr. Anderson has with respect to the purchase and/or sale of recreational vehicles

5

is the purchase of four recreational vehicles for his own use. In addition, Defendant claims that Mr. Anderson failed to utilize industry-wide standards for the calculation of diminished value, but Defendant does not identify what those standards might be.

Initially, the Court notes that Defendant has not filed a Motion to Strike or a Motion in Limine to bar Mr. Anderson's testimony. Moreover, depending upon the scope of the testimony offered, it is not clear that substantial, particularized experience in sales is required to support testimony that a vehicle – with the alleged repair history of, and in the alleged condition of, the Motorhome -- is worth nothing more than its salvage value. But the Court need not resolve the parties' dispute regarding Mr. Anderson to address Defendant's Motion for Summary Judgment; in the event that liability is established, Plaintiff has presented sufficient evidence of damages, even without Mr. Anderson's testimony.

The Warranty Act provides that "a customer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under . . . a written warranty, implied warranty, or service contract, may bring suit for damages." 15 U.S.C. § 2310(d)(1). A majority of courts have interpreted Section 2310(d) to incorporate state law remedies into causes of action under Warranty Act. *See, e.g., MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir. 1979)("the

legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act."); see also, Sorce v. Naperville Jeep Eagle, Inc., 309 Ill. App.3d 313, 322, 722 N.E.2d 227, 233 (2d Dist. 1999) ("In analyzing Magnuson-Moss issues, it must be kept in mind that in the first instance the UCC governs the sale of goods, including accompanying warranties.")

The Illinois Uniform Commercial Code governs the remedies available for transactions involving the sale of goods. See 810 ILCS 5/2-106 (stating that "[t]he remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed.") "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 815 ILCS 5/2-714(2).

The first value in the equation for damages - the value of the goods accepted if they had been as warranted - is easy to determine in the instant case as the total purchase price of the Motorhome, including finance charges. See Burrus v. Itek, 46 Ill. App.3d 350, 360 N.E.2d 1168, 1172 (3d Dist. 1977). The parties' dispute centers upon the value of the motorhome as it

was when received.

Under Illinois law, the trier of fact is permitted to determine the amount of damages "in any manner reasonable under the circumstances, as long as the award is not punitive." *Razor v. Hyundai Motor America*, 349 Ill. App.3d 651, 660, 813 N.E.2d 247 (Ill. App. 2004). It is not necessary to prove diminished value with expert testimony or mathematical precision. *Burrus*, 46 Ill. App.3d at 357-58.

For example, in *Razor v. Hyundai Motor America*, the Illinois Appellate Court concluded that a jury had properly determined the diminished value of a vehicle based only upon its repair history and the plaintiff's testimony. 349 Ill. App.3d at 660. The *Razor* plaintiff testified that, shortly after purchasing the car, the car repeatedly failed to start. *Id.* Plaintiff presented evidence of the number of times she took the car in for repair and the amount of time that she was without her car, and she testified that she would never have purchased her car had she known its true condition. *Id.* The jury awarded the plaintiff damages for breach of limited and implied warranties, for loss of use, aggravation, and inconvenience. *Id.*

The Illinois Appellate Court upheld the award, despite defendant's claim that evidence of damages was lacking, explaining that:

> Mathematical precision is not required in proof of loss, especially in the determination of consequential damages. .

8

> . . Based on its own experience and plaintiff's testimony, the jury could reasonably determine the difference between the value of the car as promised (a problem free reliable car capable of being driven at will) and the value of the car as plaintiff actually received it (an unreliable car, prone to not starting and, on occasion, incapable of being driven), as well as incidental and consequential damages.

*Id.* at 661.

Courts in other jurisdictions have similarly concluded that expert testimony is not required to establish the diminished value of a vehicle or consumer product. For example in *Mayberry v. Volkswagen of America, Inc.*, 278 Wis.2d 39, 63, 692 N.W.2d 226 (Wis. 2005), the Wisconsin Supreme Court rejected Volkswagen's challenge to the plaintiff's proffer of only her own testimony as evidence of the value of the defective car upon receipt. The court concluded that "an owner of property may testify as to its value and that such testimony may properly support a jury verdict for damages, even though the opinion is not corroborated or based on independent factual data." *Id.*; *see also D'Huyvetter v. A.O. Smith Harvestore Prods.*, 164 Wis.2d 306, 323-24, 475 N.W.2d 587 (Ct. App. 1991)(permitting the jury to find for plaintiff even though "the only evidence plaintiffs produced regarding the actual value of the Harvestore at the time of purchase was . . [t]he plaintiffs' testimony that, in her opinion, it was worth 'nothing'.")

Similarly, a plaintiff-owner's testimony constituted sufficient evidence of damages for breach of warranty in *Harlan*

9

*v. Smith*, 507 So.2d 943, 945 (Ala. Ct. App. 1987). The *Harlan* court stated that "the fact that one has purchased a mobile home and lived in it for a period of time is sufficient to support his opinion as to the mobile home's value." *Id.*

In the instant case, Plaintiff has presented receipts and correspondence documenting Defendant's numerous (and largely futile) attempts to repair – under warranty -- the Motorhome's many defects. Moreover, Plaintiff testified that he never would have purchased the Motorhome had he known its true condition, that it prevented him from traveling and visiting with friends as planned, and that he was inconvenienced by the Motorhome's numerous defects.

Defendant makes much of the fact that, at his deposition, Plaintiff admitted that he could not identify the current value of the Motorhome. Specifically, Plaintiff stated:

> Q: Do you have any knowledge about the current value of your motor home?
> A: Its junk. . . .
> Q: So you don't have any knowledge about the diminished value of the vehicle?
> A: No.

Pl.'s Dep at pp. 96-97. However, given the allegedly dilapidated state of the Motorhome, Plaintiff's testimony that the Motorhome is "junk", combined with the well-documented repair history, is sufficient to allow the jury to award damages, particularly consequential damages. *See D'Huyvetter v. A.O. Smith Harvestore*

10

*Prods.*, 164 Wis.2d 306, 323-24, 475 N.W.2d 587 (Ct. App. 1991)(permitting the jury to find for plaintiff even though "the only evidence plaintiffs produced regarding the actual value of the Harvestore at the time of purchase was . . [t]he plaintiffs' testimony that, in her opinion, it was worth 'nothing'.")

Finally, Plaintiff has also alleged the omission or concealment of a material fact in the conduct of trade or commerce, in violation of section 2 of the Consumer Fraud Act. Defendant's Motion makes no mention of Plaintiff's fraud claims. Therefore, these claims also survive Defendant's Motion for Summary Judgment.

## CONCLUSION

Defendant's challenge to Plaintiff's evidence of damages is insufficient. For the reasons set forth above, Defendant's Motion for Summary Judgment is Denied.

DATE: January 13, 2006    E N T E R E D:

*[signature]*
Arlander Keys
United States Magistrate Judge